Ray D. Hacke, OSB #173647
PACIFIC JUSTICE INSTITUTE
317 Court St. NE, Ste. 202
Salem, OR 97301
(503) 917-4409 Phone
(916) 857-6902   Facsimile

Attorney for Plaintiffs
ANGELA DAHLGREN *et al.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| ANGELA DAHLGREN, An Individual, ALISON LUGAR, An Individual, BRIAN KUNISHIGE, An Individual, LISA MIDLAM, An Individual, and JUSTIN OSER, An Individual, | Case No.: |
| | **COMPLAINT FOR DAMAGES FOR RELIGIOUS DISCRIMINATION IN VIOLATION OF TITLE VII [42 U.S.C. § 2000e-2] AND ORS 659A.030(1)(a), AND AIDING AND ABETTING RELIGIOUS DISCRIMINATION [ORS 659A.030(1)(g)]** |
| Plaintiffs, | |
| v. | |
| PORT OF PORTLAND, A Public Body, and DOES 1 THROUGH 50, Inclusive, | **JURY TRIAL REQUESTED** |
| Defendants | |

Plaintiffs ANGELA DAHLGREN, ALISON LUGAR, BRIAN KUNISHIGE, JUSTIN OSER, and LISA MIDLAM (collectively "Plaintiffs") hereby allege as follows:

## PARTIES

1.      Plaintiffs, at all times relevant herein, are former employees of Defendant PORT OF PORTLAND ("POP" or the "Port").

2.      Plaintiffs also are, and at all times herein were, practicing Christians who sought from Defendant POP religious exemptions from the Port's requirement that its employees be vaccinated against COVID-19.

3.      Defendant POP is a government entity that owns and operates not only Portland International Airport ("PDX"), but multiple marine shipping terminals as well as business parks where more than 400 companies house, manufacture, and/or distribute clothing, shoes, tires, household goods, and food.

4.      Defendant POP is, and at all times herein was, a public body, as defined in ORS §§ 30.260(4)(b) and 174.109, in Portland, Oregon.  The Port furthermore is, and at all times herein was, a "body corporate" that may sue and be sued under ORS 332.072, may buy and sell property, and satisfies any damages obligations owed to tort claimants from its own liability insurance, not state funds.

5.      The true names and capacities of Defendants DOES 1 THROUGH 50 (collectively the "DOES"), inclusive, are unknown to Plaintiffs, who therefore sue Defendants under such fictitious names.  Each Defendant designated herein as one of the DOES is legally responsible for the events and happenings herein referred to and proximately caused injuries and damages to Plaintiffs thereby, as herein alleged.  Plaintiffs will seek leave of this Court to amend this Complaint to show the DOES' names and capacities once they have been ascertained.

## JURISDICTION

6.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

7.      This Court has jurisdiction over Defendant POP pursuant to 28 U.S.C. § 1331 because Plaintiffs' action arises under the Constitution and laws of the United States.  This action presents a federal question, pursuant to 28 U.S.C. § 1343(a)(3)-(4).  The Court also has jurisdiction under 42 U.S.C. § 2000-e *et seq*. This action also arises under the laws of the State of Oregon, namely the Oregon Unlawful Discrimination in Employment Act, ORS 659A.030(1)(a) and (g).

## **VENUE**

8.      Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

9.      Venue is proper in the Court's Portland Division because Defendant POP is headquartered in Multnomah County, the events giving rise to this Complaint occurred in Multnomah County, and all agents, employees, or other persons working for, or in concert with, POP with regard to the events giving rise to this case are located in, employed in, and/or residents of Multnomah County.

## **GENERAL ALLEGATIONS**

10.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

11.     On October 12, 2021, Defendant POP enacted an administrative policy (the "Vaccine Mandate") requiring all Port employees to be vaccinated against COVID-19 no later than December 8, 2021.

12.     The Port required all of its employees to either be vaccinated against COVID-19 or be granted a religious or medical exception.  *Id.*, subsections (3).

13.     Plaintiffs are devout Christians with sincere religious beliefs which prevent them from taking the COVID-19 vaccination.

**ANGELA DAHLGREN**

14.    Plaintiff ANGELA DAHLGREN ("DAHLGREN") was employed by Defendant POP for 18 years, starting in May 2003.  From 2016 through the termination of her employment, she served as a Security Badging Coordinator.

15.    Plaintiff DAHLGREN holds, and at all times relevant herein held, sincere religious beliefs that prevent her from receiving the COVID-19 vaccine without violating her faith. As a Christian, DAHLGREN believes she must follow the teachings of the Holy Bible which instruct her to treat her body as the temple of the Holy Spirit.  This includes making the decision to not receive the COVID-19 vaccine for which she listed several Scripture references that form the basis for this belief.  *See* Attached **Exhibit "A"** [true and accurate copies of the religious exception requests that Plaintiffs submitted to the Port].

16.    Plaintiff DAHLGREN submitted a written request for a religious accommodation under Title VII. DAHLGREN utilized the Port's form entitled COVID-19 Vaccine Religious Exception Request Form.  *See* Ex. "A."

17.    The Port granted the exemption on October 26, 2021, but in a letter dated November 19, 2021, the Port denied DAHLGREN's request for a religious accommodation in part for the following reasons:

a.  The position involved interaction the public as well as other employees, increasing the risk of COVID exposure and transmission; and

b.  A high percentage of staff in her workgroup was unvaccinated, increasing the risk for COVID exposure and transmission.

18.    Plaintiff DAHLGREN asked Defendant POP if its decision could be appealed or reconsidered due to natural immunity, accommodations others in similar positions had received, and the effectiveness of current safety procedures

that were in place before vaccines became available, the Port's severe staffing shortages, or recent changes to federal mandates.

19.    Defendant POP's only response to these questions was to say it "is not reconsidering its deadline or accepting appeals to its accommodation decisions."

20.    On December 30, 2021, Defendant POP notified Plaintiff DAHLGREN that her employment was being terminated on January 12, 2022, because she was not vaccinated. *See* Attached **Exhibit "B"** [true and accurate copies of letters warning Plaintiffs of the pending termination of their employment should they decline to receive COVID-19 vaccines and other responses to Plaintiffs' religious exception requests].

21.    Plaintiff DAHLGREN, in accordance with her sincere religious convictions did not receive a COVID-19 vaccine by December 8, 2021.

22.    Plaintiff DAHLGREN opted to take the remainder of her personal time off from the Port, after which the Port placed her on unpaid administrative leave on January 10, 2022, and terminated her employment on January 12, 2022.

**ALISON LUGAR**

23.    Plaintiff ALISON LUGAR ("LUGAR") worked for Defendant POP as a police, fire, and medical dispatcher for more than 20 years, beginning in 1998.

24.    On or about October 22, 2021, Plaintiff LUGAR applied for a religious exemption from the Port's Vaccine Mandate based on her sincerely held religious beliefs. *See* Ex. "A."

25.    In her religious exemption request, Plaintiff LUGAR articulated her religious objections to receiving the COVID-19 vaccination. She stated that her body is a temple of the Holy Spirit – a reference to 1 Corinthians 6:19 – and asserted that not only does she trust in the immune system that God gave her, but

that "[t]o defile my body with an unwanted injection or intrusion would violate my sincerely held belief."

26.    On December 30, 2021, Defendant POP notified Plaintiff LUGAR that if she did not provide proof of vaccination to the Port by January 7, 2022, her employment would be terminated on January 12, 2022.  *See* Ex. "B."

27.    Because violating her sincerely held religious beliefs by receiving a COVID-19 vaccine was non-negotiable, Plaintiff LUGAR did not receive a COVID-19 vaccine.  Accordingly, Defendant POP terminated LUGAR's employment on January 12, 2022.

**BRIAN KUNISHIGE**

28.    Plaintiff BRIAN KUNISHIGE ("KUNISHIGE") was employed by Defendant Port as a Telecom Facility Specialist.

29.    On or about October 20, 2021, Plaintiff KUNISHIGE applied for a religious exemption from the vaccine based on his sincerely held religious beliefs. *See* Ex. "A."

30.    In his religious exemption request, Plaintiff KUNISHIGE articulated his religious objections to receiving the COVID-19 vaccination.  He stated that as a Christian he must follow his God-given conscience and its convictions, lest he suffer remorse for sinning against God.  *See* Ex. "A."

31.    The Port granted Plaintiff KUNISHIGE's exemption request on October 26, 2021, but in a letter dated November 19, 2021, the Port denied the request for a religious accommodation for the following reasons:

   a. The position involved interation with other Port employees or partners and/or the public, meaning there was an increased risk of unvaccinated employees infecting other Port employees as well as members of the public;

b.  The position's duties could not be performed remotely;

c.  Modifying job responsibilities to reduce internal and external interactions was not viable;

d.  Being in an open work environment increased the risk of virus transmission; and

e.  The health outcomes for unvaccinated people contracting the Delta variant (and possibly other variants) are statistically worse than those for vaccinated people, which creates a heightened risk that an unvaccinated employee who contracts COVID could be out on leave for an extended time.  Such extended leave would result in staffing issues and overtime costs.

32.  Defendant POP informed Plaintiff KUNISHIGE that if he was not vaccinated by December 8, 2021, he would be put on a 30-day leave that could be covered by paid time off ("PTO") or would otherwise be unpaid.  *See* Ex. "B."  If he was not vaccinated by January 7, 2022, Plaintiff KUNISHIGE's employment would be terminated.  *Id.*

33.  Because receiving a COVID-19 vaccine in violation of his sincerely held religious beliefs was non-negotiable, KUNISHIGE declined to be vaccinated, was placed on unpaid administrative leave on December 8, 2021, and ultimately fired January 12, 2022.

## LISA MIDLAM

34.  Plaintiff LISA MIDLAM was employed by Defendant POP as a Parking Control Representative at PDX.

35.  Plaintiff MIDLAM has sincerely held religious beliefs that prevent her from receiving the COVID-19 vaccine without violating her faith.

36.    Plaintiff MIDLAM submitted a written request for a religious accommodation under Title VII.  *See* Ex. "A."

37.    Defendant POP neither granted nor denied the exemption, but in a letter December 30, 2021, stated that if MIDLAM was not vaccinated by January 7, 2022, she would be terminated on January 12, 2021.  *See* Ex. "B."

38.    Defendant POP's legal counsel also informed Plaintiff MIDLAM that she would not be offered any in-person accommodations even if her exception request was approved, even though the Port was able to accommodate others who submitted religious exception requests and held in-person positions.

39.    Defendant POP informed Plaintiff MIDLAM that if she was not vaccinated by January 7, 2021, she would be put on leave until her employment was terminated on January 12, 2022.  *See* Ex. "B."

40.    Because receiving a COVID-19 vaccine in violation of her sincerely held religious beliefs was non-negotiable, Plaintiff MIDLAM declined to be vaccinated and was placed on unpaid administrative leave on December 9, 2021, and ultimately fired January 12, 2022.

**JUSTIN OSER**

41.    Plaintiff JUSTIN OSER ("OSER") was hired by Defendant POP in March 2006 and worked for the Port as a Marine Security Officer for 15 years.

42.    In his religious exemption request, Plaintiff OSER articulated his religious objections to receiving the COVID-19 vaccination: He stated that as a Christian, he was raised to have and continues to hold a strong stance on the sanctity of human life. This means being cautious about what he puts in his body and not rashly receiving a vaccine developed with new technology.  Additionally, because he considers his body the temple of the Holy Spirit, he must not ingest anything that he believes could harm it.  *See* Ex. "A."

43.     Plaintiff OSER also believes that whether a human soul lives or dies is not up to human choice but God's.  Therefore, most vaccines, including the available COVID-19 vaccines, are not morally permissible for Plaintiff OSER due to their development, testing, and production involving cells from aborted babies. *See* Ex. "A."

44.     On November 1, 2021, Plaintiff OSER indicated his willingness to meet with HR to discuss suitable accommodations for him to continue working for Defendant POP.  Plaintiff OSER also indicated on this form that he did not require specific accommodations and was willing to wear a mask if asked. He also offered to, at his own expense, prove to POP that he had antibodies which would make him just as, if not more, safe from COVID-19 as his coworkers.

45.     On December 13, 2021, Plaintiff OSER received a memorandum which informed him that he would be able to continue working but with accommodations that publicly called attention to OSER's unvaccinated status and effectively branded him a danger to others.  *See* Ex. "B."  These accommodations included, but were not limited to:

     a.  Wearing an exceedingly uncomfortable KN95 mask at all times except when eating or drinking or when alone in a private office;

     b.  Eating meals alone, in isolation, in a private office (with the door closed), vehicle, outdoor setting, or other solitary location; and

     c.  Not using common spaces (kitchen, lunchroom, trailers, dock houses, etc.) when another person was present.

46.     Because receiving a COVID-19 vaccine and thereby violating his sincerely held religious beliefs was non-negotiable, Defendant POP terminated Plaintiff OSER's employment on January 12, 2022.

47.    In a town hall video in December 2021, the Port's Executive Director, Curtis Robinhold ("Robinhold"), acknowledged that Defendant POP had accommodated some workers with medical exemption requests at the Port's headquarters, and was working to accommodate a limited number more outside the headquarters.

48.    Robinhold's video indicates that Defendant POP could have provided reasonable accommodations to those who sought them on religious grounds – the Port simply chose not to.

<div align="center">***Centers for Disease Control Statements***</div>

49.    In a statement published before the summer of 2021 – months before Defendant POP issued its Vaccine Mandate – the federal Centers for Disease Control and Prevention (CDC) stated that COVID-19's Delta variant resulted in similarly high COVID-19 viral loads in vaccinated and unvaccinated people.[1]

50.    CDC Director Rochelle Walensky confirmed that COVID-19-positive individuals carry the same "viral load" (equivalent to the risk of spreading infection) whether they are vaccinated or unvaccinated.[2]

51.    The CDC Director's statement was based on a study in the summer of 2021 which tested vaccinated and unvaccinated persons and found that "[c]ycle threshold values [COVID-19 viral loads] were similar among specimens from patients who were fully vaccinated and those who were not."[3]

---

[1] Statement from CDC Director Rochelle P. Walensky issued on July 30, 2021, https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html.
[2] *Id.*
[3] "Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021," *Morbidity and Mortality Weekly Report, CDC* (July 30, 2021), https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2 _w.

52.     Later studies have found that the viral load associated with COVID-19 variants such as Omicron also does not vary based upon vaccination status: "[F]ully vaccinated individuals with breakthrough infections have peak viral load similar to unvaccinated cases and can efficiently transmit infection in household settings, including to fully vaccinated contacts."[4]

53.     In another official statement, the CDC confirmed those studies and stated that it expects anyone with infected with COVID-19's Omicron variant, regardless of vaccination status or whether or not they have symptoms, could spread the virus to others.[5]

54.     Because the viral loads are no different for the vaccinated and the unvaccinated, the Port's position that the unvaccinated posed a danger to themselves, coworkers, and the public, but that the vaccinated did not pose this danger, was not consistent with the above-cited statements from the CDC.

55.     The CDC spokesperson at the time, Greta Massetti, stated that immunity for the population was at that time around 95 percent when combining those who have contracted and recovered from COVID-19 with those that have been vaccinated.  As such, she said, "it makes the most sense not to differentiate" between the vaccinated and unvaccinated.[6]

---

[4] David W. Eyre, B.M., B.Ch., D.Phil. et al., *Effect of Covid-19 Vaccination on Transmission of Alpha and Delta Variants*, New England J. Med (February 24, 2022), https://www.nejm.org/doi/full/10.1056/NEJMoa2116597.

[5] "Omicron Variant: What You Need to Know," *CDC* (March 29, 2022), https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html.

[6] "With new guidance, CDC ends test-to-stay for schools and relaxes COVID rules" NPR (Aug. 11, 2022), https://www.npr.org/sections/health-shots/2022/08/11/1116991600/with-new-guidance-cdc-ends-test-to-stay-for-schools- and-relaxes-covid-rules.

56.    Due to Defendant POP's termination of their employment and their difficulty in obtaining comparable employment with other employers, Plaintiffs have suffered economic damages as follows:

    a.    DAHLGREN: $50,000 in annual salary; approximately $1,000 in medical bills; monthly benefits payout of roughly $450 plus more than $240 to her health savings account ("HSA"); 18 years' worth of retirement benefits with Oregon's Public Employee Retirement System ("PERS")

    b.    LUGAR: Yearly salary exceeding $45,000; health, dental, & vision insurance; 403b retirement account vested at 100%

    c.    KUNISHIGE: Annual salary exceeding $86,000 (making $31,000 less with current employer); expenses related to obtaining new employment in, and subsequent relocation to, Arizona; vision, medical, and dental insurance; disability insurance; 403b retirement account vested at 100%

    d.    MIDLAM: Yearly salary exceeding $45,000; health, dental, & vision insurance; 403b retirement account vested at 100%

    e.    OSER: Annual salary of $62,000; generous health, dental, and vision insurance benefits package

57.    Due to Defendant POP's termination of their employment and difficulty in obtaining comparable employment with other employers, Plaintiffs have suffered the following noneconomic damages:

    a.    DAHLGREN: Stress and anxiety; social ostracization

    b.    LUGAR: Stress and anxiety about household finances

    c.    KUNISHIGE: Emotional distress from losing job and needing to find new employment amidst a pandemic

    d.  MIDLAM: Hair loss, sleep loss, distress, anxiety, weight gain

    e.  OSER: Stress, loss of sleep, social stigma surrounding personal medical information being made public, harassment and discrimination from supervisors and fellow employees, anxiety over job insecurity and fear of losing income, benefits, and retirement funds

58.    As a condition of filing the herein lawsuit, as required under the Oregon Tort Claims Act, Plaintiffs submitted to Defendant POP notices of their intent to sue the Port for employment discrimination.  True and accurate copies of those notices are attached hereto as **Exhibit "C."**

59.    As a condition of filing this lawsuit, Plaintiffs have obtained right-to-sue letters from Oregon's Bureau of Labor & Industries or the Equal Employment Opportunities Commission.  True and accurate copies of those letters are attached hereto as **Exhibit "D."**

60.    Attached hereto as **Exhibit "E"** are printouts from the website TimeandDate.com showing that Plaintiffs have complied with the 90-day statute of limitations set forth in each of their right-to-sue letters.

<u>**FIRST CAUSE OF ACTION:**</u>
**Violation of Title VII – Failure to Provide Reasonable Accommodations**
**[42 U.S.C. § 2000e-2]**
**Against Defendant POP**

61.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

62.    Title VII of the 1964 Civil Rights Act prohibits employers from discriminating on the basis of religion.  42 U.S.C. § 2000e-2(a)(1).

63.    For purposes of Title VII, "[t]he term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for

each working day in each of twenty or more calendar weeks in the current or preceding calendar year …"  42 U.S.C. § 2000e(b).

64.    Defendant POP qualifies as an employer under Title VII.

65.    The term "religion," for purposes of Title VII, "includes all aspects of religious observance and practice, as well as belief …" 42 U.S.C. § 2000e(j).

66.    As practicing Christians, Plaintiffs belong to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

67.    Under Title VII, Defendant POP was obligated to provide reasonable accommodations for Plaintiffs' sincerely held religious beliefs unless doing so would require the Port to incur undue hardship.

68.    Plaintiffs hold, and at all times relevant herein held, bona fide religious beliefs that conflicted with their employment-related duty to receive a COVID-19 vaccine.

69.    Plaintiffs each informed their employer, Defendant POP, of the conflict between their religious beliefs and their employment-related duty to receive a COVID-19 vaccine.

70.    Defendant POP, despite its recognition of Plaintiffs' sincerely held religious beliefs, terminated their employment due to animus against Plaintiffs' beliefs evidenced by their unwillingness to provide reasonable accommodations.

71.    Defendant POP engaged in a sham interactive process: In the cases of all Plaintiffs except OSER, the Port stated that it was willing to grant a religious exception from its Vaccine Mandate but could not accommodate them for various reasons – essentially making the grant of an exception pointless.  The Port also informed all Plaintiffs except OSER that its decisions were final and would not be reconsidered.

72.     Regarding Plaintiff OSER, Defendant POP granted accommodations that were not reasonable: The Port essentially used the guise of providing "accommodations" to shame OSER, effectively calling public attention to his unvaccinated status and treating him as a danger to his fellow employees.

73.     Defendant POP subjected Plaintiffs to discriminatory treatment by subjecting them to three adverse employment actions:

      a. Threatening to terminate their employment if they did not receive a vaccine;

      b. Placing Plaintiffs on leave under threat of impending termination if they did not receive the COVID-19 vaccine; and

      c. Following through and terminating their employment on or about January 12, 2022.

74.     Defendant POP either offered Plaintiffs no religious accommodations or, in the case of OSER, unreasonable accommodations, even though reasonable accommodations were available which would have allowed Plaintiffs to continue working while serving the Port's interest in significantly limiting the likelihood that its employees would contract and spread COVID-19 to other employees and/or the public.

75.     Defendant POP would have incurred no undue hardship by accommodating Plaintiffs' religious beliefs.  However, the Port neither made any good-faith effort to accommodate Plaintiffs nor made any viable or plausible assertion as to why it would suffer undue hardship, as the CDC at the time had already refuted the Port's claims for undue hardship.

76.     Animus toward Plaintiffs' religious beliefs is truly what motivated Defendant POP to fire Plaintiffs, any assertion the Port might make to the contrary notwithstanding.

77.     Based on the foregoing, Defendant POP has discriminated against Plaintiffs in violation of Title VII.

<div align="center">

**SECOND CAUSE OF ACTION:**
**Religious Discrimination in Violation of Title VII**
**[42 U.S.C. § 2000e-2]**
**Against Defendant POP**

</div>

78.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

79.     As practicing Christians, Plaintiffs belong to a class of persons protected under Title VII.  42 U.S.C. § 2000e-2(a)(1).

80.     Plaintiffs were qualified for their positions with Defendant POP.

81.     Defendant POP subjected Plaintiffs to multiple adverse employment actions: First, threatening to terminate their employment if they did not receive a COVID-19 vaccine in light of the Port's denial of Plaintiffs' requests for accommodation; second, placing Plaintiffs on unpaid administrative leave; and finally, terminating Plaintiffs' employment.

82.     Defendant POP treated similarly situated individuals outside Plaintiffs' protected class differently than Plaintiffs, granting medical and religious exceptions to some employees but not to others without any apparent rhyme or reason as to which employees' beliefs were worthy of accommodation while others were not.  If the Port could accommodate those with medical exemptions, the Port could accommodate those with religious exemption requests.

83.     At the very least, the fact that the Port granted medical and religious exceptions to some employees and not others, gives rise to an inference of discrimination.

84.     Based on the foregoing, Defendant Port has committed religious discrimination against Plaintiffs in violation of Title VII.

<div align="center">

Complaint
16

</div>

**THIRD CAUSE OF ACTION:**
**Violation of Title VII – Retaliation**
**[42 U.S.C. § 2000e-2]**
**Against Defendant POP**

85.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

86.     To state a claim for retaliation in violation of Title VII, a plaintiff must show that (1) the plaintiff engaged in a protected activity, (2) the plaintiff's employer subjected the employee to an adverse employment action, and (3) a causal link exists between the protected activity and the adverse action.  *Hedum v. Starbucks Corp.*, 546 F. Supp. 2d 1017, 1026 (D. Or. 2008).

87.     In declining to receive COVID-19 vaccines on religious grounds and seeking religious exceptions that would allow them to continue working in POP facilities despite being unvaccinated, Plaintiffs engaged in a protected activity.

88.     Defendant POP subjected Plaintiffs to adverse employment action by threatening to place them on unpaid leave and/or fire them, then doing so.

89.     There was unquestionably a causal link between Plaintiffs' protected activity and the adverse employment action that Defendant POP took against them: Had they not asserted their constitutionally and legally protected religious freedom, the Port would not have placed Plaintiffs on unpaid leave.

90.     Based on the foregoing, Defendant SPS has unlawfully retaliated against Plaintiffs in violation of Title VII.

**FOURTH CAUSE OF ACTION:**
**Violation of State Law Prohibiting Religious Discrimination**
**[ORS 659A.030(1)(a)]**
**Against Defendant POP**

91.     Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

92.     Like Title VII, ORS 659A.030(1)(a) prohibits employers from discharging individuals from employment on the basis of religion.

93.     Because Oregon's state law prohibiting employers from discriminating on the basis of religion is modeled after Title VII, and because the analysis for religious discrimination claims under both statutes is identical [*see Hedum*, 546 F. Supp. 2d at 1022], Plaintiffs decline to restate the facts as set forth in their first cause of action, as those facts are already incorporated as though fully set forth herein.

94.     Under 42 U.S.C. § 2000e-7, nothing in 42 U.S.C. § 1981a(b)(3), which caps the amount of non-pecuniary and punitive damages that can be awarded to Plaintiff, "shall be deemed to exempt or relieve any person from liability, duty, penalty, or punishment provided by any present or future law of any State[.]"  In other words, an Oregon jury is free to exceed any applicable federal dollar limit in accordance with Oregon law.

95.     Under Oregon law, a jury may award up to $500,000 in noneconomic damages.  *See* ORS 31.710(1).  Oregon law defines "noneconomic damages" to include "subjective, nonmonetary losses, including but not limited to … mental suffering, emotional distress, … inconvenience and interference with normal and usual activities apart from gainful employment."  ORS 31.705(2)(b)

96.     As stated *supra*, Plaintiffs have endured mental suffering and emotional distress due to POP's unlawful discrimination against her.

97.     ORS 659A.885(3) allows for punitive damages against employers such as Defendant POP who violate ORS 659A.030(1)(a).  Oregon law places no cap on punitive damages.  *See Smith v. Ethicon, Inc.*, 2022 U.S. Dist. 98543 at *2 (D. Or. June 2, 2022).

98.    Based on the foregoing, in addition to violating Title VII, Defendant POP has violated ORS 659A.030(1)(a).

**FIFTH CAUSE OF ACTION:**
**Violation of Constitutionally Protected Freedom of Religion**
**[U.S. Const. amend. I; 42 U.S.C. § 1983]**
**Against Defendants POP and DOES 1-50**

99.    Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

100.    Under 42 U.S.C. § 1983, anyone who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]"

101.    Under 42 U.S.C. § 1983, public bodies like Defendant POP can be held liable for civil rights violations that arise out of a governmental function.

102.    The U.S. Constitution's First Amendment, made applicable to states through the Fourteenth Amendment, prohibits public bodies from infringing on individuals' freedom of religion.  The Fourteenth Amendment prohibits public bodies from "depriv[ing] any person of life, *liberty*, or property without due process of law."  U.S. Const. amend. XIV, § 1 (emphasis added).

103.    Acting under color of state law, Defendant POP had a custom or policy of violating Plaintiffs' constitutionally protected freedom of religion by effectively penalizing them for adhering to their sincere, religiously-based objection to receiving a COVID-19 vaccine by placing them on unpaid leave and then firing them.

104.    Even assuming that Defendant POP had a compelling interest in halting the spread of COVID-19 among its workforce as well as among those

traveling through PDX, its shipping docks, etc., the Port could – and should – have reasonably accommodated Plaintiffs' beliefs and allowed them to keep working with reasonable accommodation.

105.   Based on the foregoing, Defendant POP has deprived Plaintiffs of their constitutionally protected freedom of religion.

## SIXTH CAUSE OF ACTION:
### Aiding and Abetting Religious Discrimination
### [ORS 659A.030(1)(g)]
### Against Defendants DOES 1-50

106.   Plaintiffs refer to and hereby incorporate the foregoing paragraphs as though fully set forth herein.

107.   ORS 659A.030(1)(g) prohibits any person from aiding and abetting an employer from engaging in employment discrimination.

108.   In their roles as employees of Defendant POP, Defendants DOES 1 THROUGH 50 (the "DOES") – whose identities have yet to be determined, and whom Plaintiffs intend to add as Defendants after learning their identities through discovery – acted in concert with, or gave substantial assistance to, POP in unlawfully discriminating against Plaintiffs on account of their religion.  The DOES did this knowing that it was unlawful for POP, as Plaintiffs' employer, to engage in religious discrimination against Plaintiffs.

109.   Because Defendant POP carried out its religious discrimination against Plaintiffs with the assistance of the DOES, the Court should hold the DOES individually and personally liable for their conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants POP and DOES 1 THROUGH 50 as follows:

### ON ALL CAUSES OF ACTION:

Complaint
20

1.     For economic damages in an amount according to proof at trial;

2.     For non-economic damages in an amount according to proof at trial;

3.     For punitive damages in an amount according to proof at trial;

4.     For attorney's fees and costs associated with bringing and maintaining this action in accordance with the law; and

5.     For such other and further relief as the Court may deem proper.

Dated: June 19, 2023                    PACIFIC JUSTICE INSTITUTE

                                        __/s/ RAY D. HACKE_____
                                        Ray D. Hacke
                                        Attorney for Plaintiffs
                                        ANGELA DAHLGREN *et al.*

# EXHIBIT A

Angie  Dahlgren



## COVID-19 Vaccine Religious Exception Request Form

*Please note that a sincerely held religious belief does not include philosophical, economic, or political beliefs.*

I am requesting an exception from the COVID-19 vaccination requirement on the basis of a sincerely held religious belief.

### Employee Information

| Name | Employee Number | Date of Request |
|------|-----------------|-----------------|
| Angie Dahlgren | 04962 | 10/18/21 |
| **Job Title** | **Department** | **Division** |
| Security Badging Coordinator | Public Safety & Security | Security Badging |

### Accommodation Request Information

1. Receiving the COVID-19 vaccination conflicts with my religious observances, practices, or beliefs as described below. ☑ Yes ☐ No

2. Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination. Specifically, detail the specific belief, tenet or observance in your religion that prevents you from complying with the vaccination requirement.

   1. As a born-again Christian, I follow the teachings of the Holy Bible. The Bible teaches that our bodies are the temple of the Holy Spirit. I believe my body is the temple of the Holy Spirit and therefore the Word of God forbids me to accept certain things into my body. And as such, to ask me to violate these commandments of my God, would force me to choose between science, and my undying faith in the written commands of God. I refer you to several verses of scripture for my claim of religious objection. Genesis 7:2; Leviticus 11:1-47; Deuteronomy 14:1-20; Romans 12:1; I

3. How long have you practiced these religious beliefs?

   Since I gave my heart to Jesus in 1990

4. Does your faith allow for other vaccines or medical interventions? If so, please describe.

   Yes, I've had 10 plus heart surgeries, and daily medications. I've had Breast Cancer Radiation treatment and breast surgeries, and I take daily medication in result of my Breast Cancer. I'm not against medical treatments and intervention. None of the treatments I received were developed with unborn fetal tissue to the best of my knowledge. I seek each one with prayer and supplication to the creator of my body.

5. Have you received other vaccinations (e.g., influenza, tetanus, shingles, etc.; vaccinations required for international travel; vaccinations required by the military; or vaccinations received for any other reason)? ☑ Yes ☐ No

6. If yes to no. 5 above, have you received these vaccinations as an adult? ☑ Yes ☐ No

1



7. If yes to no. 5 and/or no. 6 above, please explain why your religious beliefs prohibit you from receiving the COVID-19 vaccination but not these other vaccinations.  Specifically, what is different about the COVID-19 vaccine than these other vaccines you have received as an adult?

The one vaccine I chose to get as an adult was the Flu vaccine in 2007.  I got so sick, that I was hospitalized for 3 days.  I vowed never to do it again.  I don't remember the last time I had the flu.

**Please initial next to each of the statements below to acknowledge your understanding:**

| AD | I have requested exception from the COVID-19 vaccination requirement due to my sincerely held religious beliefs, and I understand and assume any risks of non-vaccination. |
|---|---|
| AD | If my request is approved and accommodations are put in place, I understand and agree to comply with and abide by the Port of Portland's COVID-19 policies, procedures, and requirements. |
| AD | I understand that, if approved, a religious accommodation is provisional and subject to change based on evolving safety, operational and other relevant considerations. |
| AD | I certify that the information I have provided in connection with my religious exception request is accurate and complete as of the date of submission. |
| AD | I understand an accommodation may be revoked and I may be subject to disciplinary action, up to and including termination of employment, if any of the information I provided in support of this exception is false. |

**Certification**

I certify and understand the following:

- My responses in this document are true and accurate.
- I hold a sincere religious belief that conflicts with the requirement to obtain the COVID-19 vaccination(s).
- Any intentional misrepresentation contained in this request may result in disciplinary action, up to and including termination.
- My request for exception/accommodation will not be granted if it is unreasonable, if it poses a direct threat to the health and/or safety of others in the workplace and/or to me, or if it creates an undue hardship.
- If this form is not completed in its entirety, it may result in a denial of the exception request.

Name:  Angie Dahlgren

Signature:

Date: 10/18/21

 **PORT OF PORTLAND**

---

**Next Steps**

- Complete this form and submit via email by 5 p.m., Thursday, October 21, 2021 to HRManagement@portofportland.com.
- Each exception request will be reviewed by Human Resources on a case-by-case basis. You will be informed of the decision by 5 p.m., Friday, October 29, 2021.
- If additional information is needed to make a determination on your exception request, Human Resources will contact you.
- If your exception request is approved, Human Resources will work with you to determine whether or not there is a reasonable accommodation for you that does not constitute an undue hardship on the Port.
- If you have any questions about your exception request, please email HRManagement@portofportland.com.

---

 **PORT OF PORTLAND**

**COVID-19 Vaccination Religious Exception Accommodations – Employee Request**
October 2021

The Port of Portland has approved your request for a religious exception from receiving the COVID-19 vaccine. The next step is the interactive process to understand what specific accommodations you are requesting.

Religious exception requests that can be accommodated without creating an undue hardship or posing a direct threat to the health or safety of yourself and others may be granted. An undue hardship exists where it imposes more than a minimal cost or burden on operations. Any approved religious exceptions must be requested at least annually and may be re-evaluated periodically at the Port's discretion.

Please complete this form in its entirety.

| Name<br>Angie Dahlgren | Employee Number<br>04962 | Date<br>11/1/2021 |
| --- | --- | --- |
| Job Title<br>Security Badging Coordinator | Department<br>Public Safety & Security | Division<br>Security Badging |

1. **As part of the interactive process, it is the Port's practice to meet with the individual seeking accommodations. Would you like to meet individually with an HR representative to discuss the accommodations you are requesting?**   Yes ✔   No ☐

   If you checked **yes**, Human Resources will be in touch to schedule a meeting; you may still, but do not have to, respond to question 2. If you checked **no**, please complete the following section.

2. **In the space below, please detail the specific accommodations you are requesting with as much specificity as possible** (e.g., if you are requesting wearing PPE, please state what type, under what circumstances, etc.).

> I will abide by any accomodations that makes my office mates comfortable.  I will wear two masks and check my tempature daily.  I've been working non stop since Covid-19 in March 2019 and I hope to continue to work.
>
> Thank you,
>
> Angie

Note: After the meeting specified in 1. above occurs and/or requested accommodations are submitted, the Port will contact you if follow-up questions or clarifications are needed to make a determination regarding requested accommodations.

Name: **Angie Dahlgren**

Signature and date: _____

1. As a born-again Christian, I follow the teachings of the Holy Bible. The Bible teaches that our bodies are the temple of the Holy Spirit. I believe my body is the temple of the Holy Spirit and therefore the Word of God forbids me to accept certain things into my body. And as such, to ask me to violate these commandments of my God, would force me to choose between science, and my undying faith in the written commands of God. I refer you to several verses of scripture for my claim of religious objection. Genesis 7:2; Leviticus 11:1-47; Deuteronomy 14:1-29; Romans 12:1; I Corinthians 6:19; II Corinthians 7:1. These verses are just a few of many that we lay claim to in our Christian faith. Whereas we do not know the long-term consequences of the Covid Vaccine and whereas we do not understand its long-term effects on our bodies (Gods Temple) We are forced to err on the side of spiritual caution and refuse to harm our temples in honor of Gods Holy Word.

2. Secondly, I believe that I have a moral duty to refuse the use of medical products, including certain vaccines, that are created using human cell lines derived from abortion during any stage of the vaccine's development, including the testing phase of development of a medical product.
I believe in the sanctity of human life. I am opposed to abortion at any stage, for any reason. I will refer you again to some of the scriptures that I base this on: Psalms 139:14-16; Jeremiah 1:5; Isaiah 44:2, 24; Luke 1:41-44; These scriptures teach me that God knows, forms and ordains the future of the fetus in their mother's womb. My belief in these scriptures conflict directly with any requirement to inject abortion-tainted vaccinations into my body.  I list some of the research done on all the vaccines: All available Covid vaccines utilize abortion-derived cell lines in either the confirmation and testing stage of development or in the production process. Both Pfizer and Moderna vaccines "used the fetal cell line HEK 293 in the confirmation phase," while the Johnson & Johnson vaccines utilizes the "PER.C6 fetal cell line cells" "to manufacture the Johnson & Johnson vaccine."  See https://www.nebraskamed.com/COVID/you-asked-weanswered-do-the-covid-19-vaccines-contain-aborted-fetal-cells (last visited August 10, 2021) ("Pfizer and Moderna did perform confirmation tests…using fetal cell lines. And Johnson & Johnson uses fetal cell lines in vaccine development, confirmation and production." "All PER.C6 cells used to manufacture the Johnson & Johnson vaccine are descended from tissue PER.C6 cells used to manufacture the Johnson & Johnson vaccine are descended from tissue taken from a … elective abortion".);

3. The 1st Amendment of the constitution: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof…"; This Amendment has protected these exact claims before the Supreme Court on many occasions. Even State governments have faced this glaring truth during the Covid crisis as they attempted to pass mandates and laws that violated this basic principle only to have their wrong decisions righted before the Courts, with financial penalties. While, as Christians, we strive to be at peace with all men and to obey all laws and mandates from a legitimately elected government. We do not do so in violation of Gods Holy Laws. ACT 4:19: "But Peter and John replied, "Judge for yourselves whether it is right in God's sight to obey you rather than God."  I believe the protection of my body is one of these spiritual laws that supersedes all manmade laws.

Brian  Kunishige

 **PORT OF PORTLAND**

## COVID-19 Vaccine Religious Exception Request Form

*Please note that a sincerely held religious belief does not include philosophical, economic, or political beliefs.*

I am requesting an exception from the COVID-19 vaccination requirement on the basis of a sincerely held religious belief.

**Employee Information**

| Name<br>Brian Kunishige | Employee Number<br>40022328 | Date of Request<br>10/18/21 |
|---|---|---|
| Job Title<br>Telecom Facility Specialist | Department<br>IT  Communication Services | Division<br>PDX Next Central Projects |

**Accommodation Request Information**

1.  Receiving the COVID-19 vaccination conflicts with my religious observances, practices, or beliefs as described below. ☑ Yes ☐ No

2.  Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination.  Specifically, detail the specific belief, tenet or observance in your religion that prevents you from complying with the vaccination requirement.

    Although followers of Christ haven't all come to the same conclusion about the vaccine, what they all share is a biblically informed belief that every single person is made in God's image (Gen. 1:27). Part of being created in God's image is to be endowed with a conscience, a God-given internal faculty that guides moral decision-making. A role of our conscience is to convict us when we do something wrong. Our conscience inflicts distress, in the form of remorse, whenever we violate what we believe

3.  How long have you practiced these religious beliefs?
    I have been a follower of Jesus Christ for 20 years.

4.  Does your faith allow for other vaccines or medical interventions?  If so, please describe.
    All Christians should praise and thank God for the awe-inspiring power of our bodily immune system. Yet we can also thank God for insights of doctors and researchers who have prevented countless early deaths and needless suffering.

5.  Have you received other vaccinations (e.g., influenza, tetanus, shingles, etc.; vaccinations required for international travel; vaccinations required by the military; or vaccinations received for any other reason)? ☐ Yes ☑ No

6.  If yes to no. 5 above, have you received these vaccinations as an adult? ☐ Yes ☑ No

1



7.  If yes to no. 5 and/or no. 6 above, please explain why your religious beliefs prohibit you from receiving the COVID-19 vaccination but not these other vaccinations.  Specifically, what is different about the COVID-19 vaccine than these other vaccines you have received as an adult?

**Please initial next to each of the statements below to acknowledge your understanding:**

| | |
|---|---|
| bmk | I have requested exception from the COVID-19 vaccination requirement due to my sincerely held religious beliefs, and I understand and assume any risks of non-vaccination. |
| bmk | If my request is approved and accommodations are put in place, I understand and agree to comply with and abide by the Port of Portland's COVID-19 policies, procedures, and requirements. |
| bmk | I understand that, if approved, a religious accommodation is provisional and subject to change based on evolving safety, operational and other relevant considerations. |
| bmk | I certify that the information I have provided in connection with my religious exception request is accurate and complete as of the date of submission. |
| bmk | I understand an accommodation may be revoked and I may be subject to disciplinary action, up to and including termination of employment, if any of the information I provided in support of this exception is false. |

**Certification**

I certify and understand the following:

- My responses in this document are true and accurate.
- I hold a sincere religious belief that conflicts with the requirement to obtain the COVID-19 vaccination(s).
- Any intentional misrepresentation contained in this request may result in disciplinary action, up to and including termination.
- My request for exception/accommodation will not be granted if it is unreasonable, if it poses a direct threat to the health and/or safety of others in the workplace and/or to me, or if it creates an undue hardship.
- If this form is not completed in its entirety, it may result in a denial of the exception request.

Name:  Brian Kunishige

Signature:  Brian Kunishige

Digitally signed by Brian Kunishige
DN: C=US, E=brian.kunishige@portofportland.com,
O=Port of Portland, OU=PDXNext Central Project Office,
CN=Brian Kunishige
Date: 2021.10.20 07:56:29-07'00'

Date: 10/20/21

2

 **PORT OF PORTLAND**

---

**Next Steps**
- Complete this form and submit via email by 5 p.m., Thursday, October 21, 2021 to HRManagement@portofportland.com.
- Each exception request will be reviewed by Human Resources on a case-by-case basis. You will be informed of the decision by 5 p.m., Friday, October 29, 2021.
- If additional information is needed to make a determination on your exception request, Human Resources will contact you.
- If your exception request is approved, Human Resources will work with you to determine whether or not there is a reasonable accommodation for you that does not constitute an undue hardship on the Port.
- If you have any questions about your exception request, please email HRManagement@portofportland.com.

---



**COVID-19 Vaccination Religious Exception Accommodations – Employee Request**
October 2021

The Port of Portland has approved your request for a religious exception from receiving the COVID-19 vaccine. The next step is the interactive process to understand what specific accommodations you are requesting.

Religious exception requests that can be accommodated without creating an undue hardship or posing a direct threat to the health or safety of yourself and others may be granted. An undue hardship exists where it imposes more than a minimal cost or burden on operations. Any approved religious exceptions must be requested at least annually and may be re-evaluated periodically at the Port's discretion.

Please complete this form in its entirety.

| Name BRIAN KUNISHIGE | Employee Number 40022328 | Date 26OCT2021 |
|---|---|---|
| Job Title Telecom Facility Specialist | Department IT  Communication Services | Division PDX Next Central Project Office |

1. **As part of the interactive process, it is the Port's practice to meet with the individual seeking accommodations. Would you like to meet individually with an HR representative to discuss the accommodations you are requesting?**     Yes ☐     No ☑

   If you checked **yes**, Human Resources will be in touch to schedule a meeting; you may still, but do not have to, respond to question 2. If you checked **no**, please complete the following section.

2. **In the space below, please detail the specific accommodations you are requesting with as much specificity as possible** (e.g., if you are requesting wearing PPE, please state what type, under what circumstances, etc.).

I HAVE NO PROBLEMS MEETING WITH HR IF NEEDED.  THAT SAID, I AM NOT REQUESTING ANY SPECIAL ACCOMMODATIONS FOR ME TO DO MY JOB.

Note: After the meeting specified in 1. above occurs and/or requested accommodations are submitted, the Port will contact you if follow-up questions or clarifications are needed to make a determination regarding requested accommodations.

Name: BRIAN KUNISHIGE

Signature and date: Brian Kunishige
Digitally signed by Brian Kunishige
DN: C=US, E=brian.kunishige@portofportland.com, O=Port of Portland, OU=IT Comm Ops, CN=Brian Kunishige
Date: 2021.10.26 13:40:35-07'00'

Alison  Lugar

# PORT OF PORTLAND

## COVID-19 Vaccine Religious Exception Request Form

*Please note that a sincerely held religious belief does not include philosophical, economic, or political beliefs.*

I am requesting an exception from the COVID-19 vaccination requirement on the basis of a sincerely held religious belief.

**Employee Information**

| Name | Employee Number | Date of Request |
|---|---|---|
| Job Title | Department | Division |

**Accommodation Request Information**

1.  Receiving the COVID-19 vaccination conflicts with my religious observances, practices, or beliefs as described below. ☐ Yes     ☐ No

2.  Please describe your religious belief and how it affects your ability to receive a COVID-19 vaccination.  Specifically, detail the specific belief, tenant or observance in your religion that prevents you from complying with the vaccination requirement.

3.  How long have you practiced these religious beliefs?

4.  Does your faith allow for other vaccines or medical interventions?  If so, please describe.

5.  Have you received other vaccinations (e.g., influenza, tetanus, shingles, etc.; vaccinations required for international travel; vaccinations required by the military; or vaccinations received for any other reason)?      Yes      No

6.  If yes to no. 5 above, have you received these vaccinations as an adult?      Yes      No

1



7.  If yes to no. 5 and/or no. 6 above, please explain why your religious beliefs prohibit you from receiving the COVID-19 vaccination but not these other vaccinations.  Specifically, what is different about the COVID-19 vaccine than these other vaccines you have received as an adult?

**Please initial next to each of the statements below to acknowledge your understanding:**

| | |
|---|---|
| *[initials]* | I have requested exception from the COVID-19 vaccination requirement due to my sincerely held religious beliefs, and I understand and assume any risks of non-vaccination. |
| *[initials]* | If my request is approved and accommodations are put in place, I understand and agree to comply with and abide by the Port of Portland's COVID-19 policies, procedures, and requirements. |
| *[initials]* | I understand that, if approved, a religious accommodation is provisional and subject to change based on evolving safety, operational and other relevant considerations. |
| *[initials]* | I certify that the information I have provided in connection with my religious exception request is accurate and complete as of the date of submission. |
| *[initials]* | I understand an accommodation may be revoked and I may be subject to disciplinary action, up to and including termination of employment, if any of the information I provided in support of this exception is false. |

**Certification**

I certify and understand the following:

- My responses in this document are true and accurate.
- I hold a sincere religious belief that conflicts with the requirement to obtain the COVID-19 vaccination(s).
- Any intentional misrepresentation contained in this request may result in disciplinary action, up to and including termination.
- My request for exception/accommodation will not be granted if it is unreasonable, if it poses a direct threat to the health and/or safety of others in the workplace and/or to me, or if it creates an undue hardship.
- If this form is not completed in its entirety, it may result in a denial of the exception request.

Name: *Alison M Lugar*

Signature: *Alison M Lugar*

Date: *10-20-2024*

2



**Next Steps**

- Complete this form and submit via email by 5 p.m., Thursday, October 21, 2021 to HRManagement@portofportland.com.
- Each exception request will be reviewed by Human Resources on a case-by-case basis. You will be informed of the decision by 5 p.m., Friday, October 29, 2021.
- If additional information is needed to make a determination on your exception request, Human Resources will contact you.
- If your exception request is approved, Human Resources will work with you to determine whether or not there is a reasonable accommodation for you that does not constitute an undue hardship on the Port.
- If you have any questions about your exception request, please email HRManagement@portofportland.com.

Lisa  Midlam

# CONFIDENTIAL

Lisa R. Midlam
801 NW 82nd St
Vancouver, WA  98665

October 20, 2021

Dan Blaufus
General Counsel
Port of Portland
7000 NE Airport Way
Portland, Oregon  97218

OCT 26 2021 AM9:44
PORT LEGAL DEPT

Dear Mr. Dan Blaufus:
I have deeply held spiritual beliefs which preclude my taking the COVID vaccine. I am
claiming a religious exemption. The US Constitution, and Title VII of the Civil Rights Act
of 1964, both protect religious freedom.

Sincerely,

Lisa Midlam
Parking Control Representative
Port of Portland 40040030

*transmitted via United States Postal Service, signature mailed/return receipt

Justin  Oser

# PORT OF PORTLAND

**COVID-19 Vaccination Religious Exception Accommodations – Employee Request**
October 2021

The Port of Portland has approved your request for a religious exception from receiving the COVID-19 vaccine. The next step is the interactive process to understand what specific accommodations you are requesting.

Religious exception requests that can be accommodated without creating an undue hardship or posing a direct threat to the health or safety of yourself and others may be granted. An undue hardship exists where it imposes more than a minimal cost or burden on operations. Any approved religious exceptions must be requested at least annually and may be re-evaluated periodically at the Port's discretion.

Please complete this form in its entirety.

| Name | Employee Number | Date |
|------|-----------------|------|
| Justin Oser | 05243 | 11-1-2021 |
| Job Title | Department | Division |
| Marine Security Officer | Marine Security | Marine |

1. **As part of the interactive process, it is the Port's practice to meet with the individual seeking accommodations. Would you like to meet individually with an HR representative to discuss the accommodations you are requesting?**   Yes ☑   No ☐

   If you checked **yes**, Human Resources will be in touch to schedule a meeting; you may still, but do not have to, respond to question 2. If you checked **no**, please complete the following section.

2. **In the space below, please detail the specific accommodations you are requesting with as much specificity as possible** (e.g., if you are requesting wearing PPE, please state what type, under what circumstances, etc.).

> I don't need specific accommodations. I can wear a mask if requested. I also, at my own expense, could get a antibody test to confirm If may have already had it. Antibody's are far superior to vaccines

Note: After the meeting specified in 1. above occurs and/or requested accommodations are submitted, the Port will contact you if follow-up questions or clarifications are needed to make a determination regarding requested accommodations.

Name: Justin Oser

Signature and date: *Justin Oser*

To Whom it May Concern:

I am affirming my religious right by requesting a religious exception to the OHA mandate that I be vaccinated for COVID-19 as a condition of my employment. 29 CFR § 1605.1 defines "religious practices to include moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views…The fact that no religious group espouses such belief will not determine whether the belief or the fact that the religious group to which the individual professes to belong may not accept such belief is a religious belief of the employee or prospective employee."

I am a lifelong Christian. While I grew up Catholic, for the last ten years, the focus of my sincerely held religious beliefs have been on biblical principles. I live my life by the Bible and let the Bible and scripture guide me. While various religious leaders of different sects have indicated it may be morally permissible to receive an immunization due to the seriousness of COVID-19, being morally permissible does not mean the ethical beliefs of an individual, such as myself, should or can be set aside. Each individual has their own moral compass and while religious leaders may provide guidance, it is an individual's beliefs and the Bible that guide our morality.

My sincerely held religious, moral and ethical beliefs, as well as my sense of duty, has led me to a life of serving my country, my community, God, and protecting all life. In line with these firmly held beliefs, I believe it is immoral, unethical and disrespectful to human life and God's word to be coerced into taking a vaccine that is brand new and are unlike preexisting vaccines in various respects involving technology, development, and content. A higher power has taught me that my body is sacred, and I believe the COVID-19 vaccine would go against my belief that my body is my temple. It is against my personal religious, moral, and ethical beliefs to do something that may damage my body. 1 Corinthians 3:16-17 states "Don't you know that you yourselves are God's temple and that God's Spirit dwells in your midst? If anyone destroys God's temple, God will destroy that person; for God's temple is sacred, and you together are that temple." 1 Corinthians 6:19-20 also states, "Do you not know that your bodies are temples of the Holy Spirit, who is in you, whom you have received from God? You are not your own; you were bought at a price. Therefore honor God with your bodies." It is my sincerely held religious belief that destroying God's temple is ethically wrong.

It is my firmly held religious belief that as a lifelong Christian, the scriptures reveal that God knows us even before we were conceived.  My closely held religious beliefs guide me to decline the COVID-19 vaccine because fetal cell lines were used in the testing, development or manufacturing of COVID 19 vaccines currently available. Please see OHA "Vaccine Facts for Christian Faith Communities". It is my sincerely held belief that life begins at conception and ends at natural death. Our souls come to this earth at conception. I believe we as humans cannot decide if a soul gets to stay and live a life here on earth or if it dies with abortion and goes to heaven. That is up to God and should occur without human intervention. I believe it violates my sincerely held religious beliefs to cooperate with or be complicit in abortion in any way.  My body is my temple and the right to choose what I do with my body shall be directed by God.

I previously served my country in the military. At that time, I was ignorant about the manufacture of vaccines. I had no idea of the use of fetal cell lines in many products we use today

and unknowingly received vaccines that violated my sincerely held religious beliefs. Approximately eight years ago, due to an egg food allergy, I began researching vaccines. Although my initial research was medically based, I believe God led me on that path so I could discover the use of fetal cell lines in the testing, development and manufacturing of vaccinations and adhere to my moral and ethical beliefs. Psalm 118:8 It is better to take refuge in the lord than to trust in man.

Since I learned about the use of fetal cell lines, I have not taken a vaccination or medication to my knowledge that was developed, manufactured, or tested with fetal cells. I have reaffirmed my beliefs through prayer and asked forgiveness for my sins related to the misinformation and lack of knowledge regarding previously taking medications or vaccinations that involved the use of fetal stem cells in any way. It has been approximately ten years since I received any vaccination and I do not take Tylenol. Even my child is minimally vaccinated due to my sincerely held religious beliefs.  I honor my body and spirit by using naturopathic medicine and use herbal and supplements to preserve my body as God's temple.

I request my health information, as well as vaccination status, not be disclosed beyond the HR department for the evaluation of my religious exception. In the State of Oregon, I have the right to have protected health information safeguarded from unlawful use or disclosure. ORS 192.553. Further, HIPAA prevents employers from disclosing individually identifiable health information, including someone's name. 45 CFR § 164.514(b)(2)(i).

Sincerely,


Justin Oser

EXHIBIT  B

Angie  Dahlgren



December 30, 2021

Angie Dahlgren
3833 Mohawk Way
West Linn, OR 97068

Re: Vaccine Status and Separation of Employment

Dear Angie,

You are receiving this letter because we have not yet received proof of vaccination from you and want to inform you of important dates and processes.

If you are fully vaccinated or plan to be fully vaccinated by January 7, 2022, you need to email HR-Management no later than Friday, January 7, 2022 by 12:00 p.m., with your vaccination card attached. If we do not hear from you by then, you will be placed on paid administrative leave from Monday, January 10 to Wednesday, January 12 as we prepare for your separation from employment, which will be effective January 12, 2022.

We will have your final check(s) prepared and ready for pick-up inside the lobby of Port Headquarters on Wednesday, January 12 between 2:00-2:45 p.m. You may arrive at any time in that window. You can park in the roundabout outside the lobby entrance.

To release your check, you will need to return all Port property in your possession. This includes laptops, radios, keys, badges, parking tags, other IT equipment, Port furniture you have at home if you have been working remotely, Port files and documents and/or any other items belonging to the Port. We will have a list from your manager on the specific items that need to be collected.

If you have personal items at your workstation that you need to collect, please reach out directly to your manager to coordinate pick-up prior to January 12, 2022.

Please email HR-Management with any questions. Thank you.

Sincerely,

Antoinette Gasbarre
Sr. Manager, Human Resources Operations

**Mission:** To enhance the region's economy and quality of life by providing efficient cargo and air passenger access to national and global markets, and by promoting industrial development.

7200 NE Airport Way  Portland OR  97218
Box 3529  Portland OR  97208
503 415 6000

Brian  Kunishige

Alison Lugar



December 30, 2021

Alison Lugar
12335 Boynton Street
Oregon City, OR 97045

Re: Vaccine Status and Separation of Employment

Dear Alison,

You are receiving this letter because we have not yet received proof of vaccination from you and want to inform you of important dates and processes.

If you are fully vaccinated or plan to be fully vaccinated by January 7, 2022, you need to email HR-Management no later than Friday, January 7, 2022 by 12:00 p.m., with your vaccination card attached. If we do not hear from you by then, you will be placed on paid administrative leave from Monday, January 10 to Wednesday, January 12 as we prepare for your separation from employment, which will be effective January 12, 2022.

We will have your final check(s) prepared and ready for pick-up inside the lobby of Port Headquarters on Wednesday, January 12 between 2:00-2:45 p.m. You may arrive at any time in that window. You can park in the roundabout outside the lobby entrance.

To release your check, you will need to return all Port property in your possession. This includes laptops, radios, keys, badges, parking tags, other IT equipment, Port furniture you have at home if you have been working remotely, Port files and documents and/or any other items belonging to the Port. We will have a list from your manager on the specific items that need to be collected.

If you have personal items at your workstation that you need to collect, please reach out directly to your manager to coordinate pick-up prior to January 12, 2022.

Please email HR-Management with any questions. Thank you.

Sincerely,

Antoinette Gasbarre
Sr. Manager, Human Resources Operations

**Mission:** To enhance the region's economy and quality of life    7200 NE Airport Way  Portland OR  97218
by providing efficient cargo and air passenger access    Box 3529  Portland OR  97208
to national and global markets, and by promoting industrial development.    503 415 6000

Lisa Midlam



December 30, 2021

Lisa Midlam
801 NW 82nd St
Vancouver, WA 98665

Re: Vaccine Status and Separation of Employment

Dear Lisa,

You are receiving this letter because we have not yet received proof of vaccination from you and want to inform you of important dates and processes.

If you are fully vaccinated or plan to be fully vaccinated by January 7, 2022, you need to email HR-Management no later than Friday, January 7, 2022 by 12:00 p.m., with your vaccination card attached. If we do not hear from you by then, you will be placed on paid administrative leave from Monday, January 10 to Wednesday, January 12 as we prepare for your separation from employment, which will be effective January 12, 2022.

We will have your final check(s) prepared and ready for pick-up inside the lobby of Port Headquarters on Wednesday, January 12 between 2:00-2:45 p.m. You may arrive at any time in that window. You can park in the roundabout outside the lobby entrance.

To release your check, you will need to return all Port property in your possession. This includes laptops, radios, keys, badges, parking tags, other IT equipment, Port furniture you have at home if you have been working remotely, Port files and documents and/or any other items belonging to the Port. We will have a list from your manager on the specific items that need to be collected.

If you have personal items at your workstation that you need to collect, please reach out directly to your manager to coordinate pick-up prior to January 12, 2022.

Please email HR-Management with any questions. Thank you.

Sincerely,

Antoinette Gasbarre
Sr. Manager, Human Resources Operations

Justin  Oser

To: Justin Oser

From: William McCormack

Date: 12/13/2021

Subject: Approved Accommodations

This memo is to review the approved accommodations based on an approved exception to receiving the COVID-19 vaccine. The following accommodations and expectations will be put in place effective December 9, 2021 and will include, but may not be limited to:

1. Wearing an N95 mask at all times during work hours with the exception of when actively eating or drinking, or when alone in a vehicle or private office with the door shut or outdoors when at least 6' of distancing can be maintained.
   o When Gate Officer checking ID: Monday thru Friday 0700 to 1600 face masks will be worn. After hours, Monday thru Friday and on weekends face masks will be worn while checking ID when unable to maintain 6 feet of social distancing.
   o You will have to be fit tested and trained on how to effectively wear the mask, until the fit test is completed you will be allowed to wear an KN95
   o You will be subject to periodic re-training or check ins
   o The Port will provide masks for your use – Contact Andrew Hazell at MFM for replacement masks.
2. Eating all meals alone (in a private office, vehicle, outside or other solitary place)
   o Eating with other employees or in places other employees might access is not allowed
3. Being tested for COVID-19 at least weekly at the following Location: Carbon Health 7000 NE Airport Way #Upper outer Roadway, Portland OR 97218. **Specifics as to how to make appointments or if testing will be walk-in to follow, from HR.**
   o Weekly testing will be provided by the Port.
   o Weekly testing will commence the week of 12/13/21 and then there after on the first day of your scheduled work week.
   o The cost of any mandated test will be borne by the Port, in addition to the Port allowing one (1) hour's pay at an MSO's regular rate of pay as compensation for each off-duty test.
     o The test time will be entered into your timecard with a note in the comment section stating "COVID 19 test"
   o Note that the frequency of the testing requirement may be changed at the Port's sole discretion
4. For unvaccinated employees with private offices, conducting all work in the office with the door shut and not holding in person meetings in the office
5. Not using common spaces when another person is present (kitchen, dock houses, trailer, lunchrooms, etc.)
6. Maintaining at least six feet distance from other employees and the public
7. Not reporting to work for any reason when ill or if you have been exposed to COVID

8. When assigned as Gate officer, not allowing other people in the gate house; all verbal interactions must be conducted outdoors.
9. When assigned as Patrol officer, limiting office access to check email and complete reports as follows:
   o Terminal 6 - The Marine Security trailer can be used only when no one else is present
   o Terminal 4 – In the T4 Administration building, the 1st office to the left just as you enter in the second set of glass doors can be used with the door closed

These accommodations will be reviewed periodically, at a minimum every 90 days. Additional accommodations may be put in place as needed, or existing accommodations may be deemed no longer appropriate at the Port's discretion. Failure to comply with all accommodation requirements and expectations may result in revocation of the accommodation and the subsequent termination of your employment.

Sincerely,

William McCormack
Manager Marine Security, T4, T5 Operations

I have read the above and accept the accommodations as offered.

Yes _____ No __X__ _for_

_Just One_ _____ Date: _12-22-2021_

Justin Oser

cc:   Donna Eaves
      Geoff Owen

EXHIBIT  C

Angie  Dahlgren

## Janzen Legal Services LLC

**To: Port of Portland**

**Date: 4/13/2022**

**Re: Tort Claims Notice on behalf of Angela Dahlgren**

### Claimant Information

1.      Claimant name:         Angela Danelle Dahlgren

2.      Current residential address:

        3833 Mohawk Way, West Linn, OR 97068

3.      Mailing address:

        C/O Caroline Janzen
        Janzen Legal Services
        4550 SW Hall Blvd., Beaverton, OR 97005

4.      Claimant's telephone number:         (503) 545-4110

5.      Claimant's email address:       jls@ruggedlaw.com; denang7@gmail.com

### Incident information

6.      Date of Incident:         12/8/2021 unpaid leave; 1/12/2022 termination

7.      Location of incident:         PDX Location: 7201 NE Airport Way, Portland OR 97218

8.      Description of incident:       The claimant had reasonable cause to not receive the vaccine, she filed a religious exemption on 10/18/2021 which was approved 10/26/2021. The Port of Portland denied her requests for accommodation 11/19/2021 and offered no other options. The Port of Portland took action that revealed her private medical information to the public by placing her on unpaid leave to be followed by termination.

Janzen Legal Services, LLC
4550 SW Hall Blvd.
Beaverton, OR 97005
Office: 503-520-9900



## Janzen Legal Services LLC

**Governmental Agency**

9.    Name of State agency involved and why you believe they are responsible for your damage/injury.

       The Port of Portland is responsible for employment discrimination seen in the adverse employment action they initiated against their employee, Angie Dahlgren, as a direct result of her religious practice.

10.    Name of employees involved:

       Angela Dahlgren

**Damages**

11.    List damages associated with the tortious conduct:

       The claimant suffered harm from the emotional stress and social stigma associated with her personal medical information being made public in the workplace, the harassment and discrimination that followed, and the repercussions of this stress, particularly the loss of relationships. She further suffered economic damages from the loss of continued gainful employment, including income, benefits, medical and dental insurance which she can only get through an employer due to medical conditions, and loss of 19 years earned retirement contributions and 15 years of projected continued PERS contributions.

**Witnesses**

12.    Witness name, address, phone number and relationship:

       To be determined by an investigation.

DocuSigned by:

_Angie Da_
89764D96F0DF41B...

_____

Signature of Claimant

4/13/2022

_____

Date

**Janzen Legal Services, LLC**
4550 SW Hall Blvd.
Beaverton, OR 97005
Office: 503-520-9900

Brian Kunishige

# Janzen Legal Services LLC

**To: Port of Portland**

**Date: 4/13/2022**

**Re: Tort Claims Notice on behalf of Brian Kunishige**

## Claimant Information

1.      Claimant name:          Brian Michael Kunishige

2.      Current residential address:

        85 W Sun Ray Dr., Queen Creek, AZ 86143

3.      Mailing address:

        C/O Caroline Janzen
        Janzen Legal Services
        4550 SW Hall Blvd., Beaverton, OR 97005

4.      Claimant's telephone number:          (503) 701-8526

5.      Claimant's email address:          jls@ruggedlaw.com; brian@kunishige.net

## Incident information

6.      Date of Incident:          12/9/2021 unpaid leave; 1/12/2022 termination

7.      Location of incident:          PDX Location: 7200 NE Airport Way, Portland, OR 97218

8.      Description of incident:          The claimant had reasonable cause to not receive the vaccine, he filed a religious exemption on 10/18/2021 which was approved 10/26/2021. The Port of Portland denied his requests for accommodation 11/19/2021 and offered no other options. The Port of Portland took action that revealed his private medical information to the public by placing him on unpaid leave to be followed by termination.

Page 1 – TORT CLAIMS NOTICE

**Janzen Legal Services, LLC**
4550 SW Hall Blvd.
Beaverton, OR 97005
Office: 503-520-9900



**Janzen Legal Services LLC**

### Governmental Agency

9.      Name of State agency involved and why you believe they are responsible for your damage/injury.

        The Port of Portland is responsible for employment discrimination seen in the adverse employment action they initiated against their employee, Brian Kunishige, as a direct result of his religious practice.

10.     Name of employees involved:

        Brian Kunishige

### Damages

11.     List damages associated with the tortious conduct:

        The claimant suffered harm from the emotional stress and social stigma associated with his personal medical information being made public in the workplace, the harassment and discrimination that followed, and the repercussions of this stress. He further suffered economic damages from the loss of continued gainful employment, including income, benefits, medical and dental insurance, and loss of retirement contributions.

### Witnesses

12.     Witness name, address, phone number and relationship:

        To be determined by an investigation.

DocuSigned by:

*Brian kunishige*

3B6BCF0799664F8...

4/13/2022

Signature of Claimant                                          Date

**Janzen Legal Services, LLC**
4550 SW Hall Blvd.
Beaverton, OR 97005
Office: 503-520-9900

Alison Lugar

## Janzen Legal Services LLC

**To: Port of Portland**

**Date: 4/13/2022**

**Re: Tort Claims Notice on behalf of Alison Lugar**

### Claimant Information

1.      Claimant name:        Alison Mary Lugar

2.      Current residential address:

         12335 Boynton St., Oregon City, OR 97045

3.      Mailing address:

         C/O Caroline Janzen
         Janzen Legal Services
         4550 SW Hall Blvd., Beaverton, OR 97005

4.      Claimant's telephone number:        (503) 754-3100

5.      Claimant's email address:        jls@ruggedlaw.com; alison@master-tech.net

### Incident information

6.      Date of Incident:        12/8/2021 unpaid leave; 1/12/2022 termination

7.      Location of incident:        PDX Location: 7200 NE Airport Way, Portland, OR 97218

8.      Description of incident:        The claimant had reasonable cause to not receive the vaccine, she filed a religious exemption on 10/20/2021 which was approved 10/26/2021. The Port of Portland denied her requests for accommodations 11/19/2021 and offered no other options. The Port of Portland took action that revealed her private medical information to the public by placing her on unpaid leave to be followed by termination.

Page 1 – TORT CLAIMS NOTICE

Janzen Legal Services, LLC
4550 SW Hall Blvd.
Beaverton, OR 97005
Office: 503-520-9900



## Janzen Legal Services LLC

### Governmental Agency

9.    Name of State agency involved and why you believe they are responsible for your damage/injury.

      The Port of Portland is responsible for employment discrimination seen in the adverse employment action they initiated against their employee, Alison Lugar, as a direct result of her religious practice.

10.    Name of employees involved:

      Alison Lugar

### Damages

11.    List damages associated with the tortious conduct:

      The claimant suffered harm from the emotional stress and social stigma associated with her personal medical information being made public in the workplace, the harassment and discrimination that followed, and the physical repercussions of this stress. Specifically, she has experienced extreme financial anxiety and emotional turmoil as she intended to work for the Port of Portland until retirement to ensure the best economic security she could provide for her daughter whose medical disabilities render her a dependent. Her husband's death from cancer in 2017 has left her as the sole provider for her family. She further suffered economic damages from the loss of continued gainful employment, including her entire household's income, benefits, medical and dental insurance, and loss of PERS retirement contributions.

### Witnesses

12.    Witness name, address, phone number and relationship:

      To be determined by an investigation.

DocuSigned by:

*Alison Lugar*

B18BA847EA4B434...

4/13/2022

Signature of Claimant                                Date

Page 2 – TORT CLAIMS NOTICE

**Janzen Legal Services, LLC**
4550 SW Hall Blvd.
Beaverton, OR 97005
Office: 503-520-9900

Lisa Midlam

DocuSign Envelope ID: 00221A98-1F6D-4917-9878-A8DE55C3EE9F

## Janzen Legal Services LLC

**To: Port of Portland**

**Date: 4/19/2022**

**Re: Tort Claims Notice on behalf of Lisa Midlam**

### Claimant Information

1.     Claimant name:         Lisa Midlam

2.     Current residential address:

       801 NW 82nd St., Vancouver, WA 98665

3.     Mailing address:

       C/O Caroline Janzen
       Janzen Legal Services
       4550 SW Hall Blvd., Beaverton, OR 97005

4.     Claimant's telephone number:        (360) 433-7914

5.     Claimant's email address:         jls@ruggedlaw.com; glowfrog@protonmail.com

### Incident information

6.     Date of Incident:         12/9/2021unpaid leave; 1/7/2022 termination initiated

7.     Location of incident:         PDX Location: 7200 NE Airport Way, Portland, OR 97218

8.     Description of incident:        The claimant had reasonable cause to not receive the vaccine, she filed a religious exemption on 10/20/2021 which was not accepted nor denied. The Port of Portland further denied her any accommodations. The Port of Portland took action that revealed her private medical information to the public by placing her on unpaid leave to be followed by termination.

Page 1 – TORT CLAIMS NOTICE

## Janzen Legal Services LLC

### Governmental Agency

9.    Name of State agency involved and why you believe they are responsible for your damage/injury.

The Port of Portland is responsible for employment discrimination seen in the adverse employment action they initiated against their employee, Lisa Midlam, as a direct result of her religious practice.

10.    Name of employees involved:

Lisa Midlam

### Damages

11.    List damages associated with the tortious conduct:

The claimant suffered harm from the emotional stress and social stigma associated with her personal medical information being made public in the workplace, the excessive harassment from HR emails during this period, and the repercussions of this stress. She particularly endured mental and emotional turmoil over her job being jeopardized by decisions being made by remote workers when she had served throughout the pandemic and received service awards for her work on the front lines. The loss of a stable schedule, income and benefits during her spouse's cancer healing added increasing stress and instability to her life and family.  She further suffered economic damages from the loss of continued gainful employment, including income, benefits including all sick and vacation time, medical and dental insurance, loss of retirement contributions, loss of time accumulated to complete PERS, and an inability to recoup the time to ever attain PERS.

### Witnesses

12.    Witness name, address, phone number and relationship:

To be determined by an investigation.

**Janzen Legal Services, LLC**
4550 SW Hall Blvd.
Beaverton, OR 97005
Office: 503-520-9900



## Janzen Legal Services LLC

DocuSigned by:

191A2279ADEA425...

4/28/2022

_____

Signature of Claimant                                    Date

**Janzen Legal Services, LLC**
4550 SW Hall Blvd.
Beaverton, OR 97005
Office: 503-520-9900

Justin  Oser

DocuSign Envelope ID: F427DFD1-9A65-482C-A359-DA5E9B0C9800

# Janzen Legal Services LLC

---

**To: Port of Portland**

**Date: 4/13/2022**

**Re: Tort Claims Notice on behalf of Justin Oser**

## Claimant Information

1.    Claimant name:        Justin Thomas Oser

2.    Current residential address:

> 29117 NE 55th Ave., Battle Ground, WA 98604

3.    Mailing address:

> C/O Caroline Janzen
> Janzen Legal Services
> 4550 SW Hall Blvd., Beaverton, OR 97005

4.    Claimant's telephone number:        (360) 624-5945

5.    Claimant's email address:        jls@ruggedlaw.com; liberty556@startmail.com

## Incident information

6.    Date of Incident:        12/14/2021

7.    Location of incident:        PDX Location: 7200 NE Airport Way, Portland OR 97218

8.    Description of incident:        The claimant had reasonable cause to not receive the vaccine, he filed a religious exemption on 11/1/2021 which was approved 10/29/2021. The Port of Portland took action that revealed his private medical information to the public by requiring him to follow excessive and unreasonable accommodations, including but not limited to wearing KN95 masks, eating alone, only going into public spaces if no one else was present, weekly COVID testing, and social distancing.

---

Janzen Legal Services, LLC
4550 SW Hall Blvd.
Beaverton, OR 97005
Office: 503-520-9900



## Janzen Legal Services LLC

### Governmental Agency

9.      Name of State agency involved and why you believe they are responsible for your damage/injury.

        The Port of Portland is responsible for employment discrimination seen in the unreasonable accommodations they placed on their employee, Justin Oser, as a direct result of his religious practice, which were then repealed on 3/12/2022 after a long period of harassment and discrimination in the workplace.

10.      Name of employees involved:

        Justin Oser

### Damages

11.      List damages associated with the tortious conduct:

        The claimant suffered harm from the emotional stress and social stigma associated with his personal medical information being made public in the workplace, the harassment and discrimination that followed, and the repercussions of this stress, the financial anxiety that came with job insecurity and fear of losing income, benefits and retirement.

### Witnesses

12.      Witness name, address, phone number and relationship:

        To be determined by an investigation.

DocuSigned by:

*Justin Oser*

2632D35105E24DC

4/17/2022

_____

_____

Signature of Claimant

Date

**Janzen Legal Services, LLC**
4550 SW Hall Blvd.
Beaverton, OR 97005
Office: 503-520-9900

EXHIBIT  D

Angie  Dahlgren



April 13, 2023

**CHRISTINA E. STEPHENSON**
Labor Commissioner

ANGELA D DAHLGREN
C/O JANZEN LEGAL SERVICES, LLC.
4550 SW HALL BLVD.
BEAVERTON, OR 97005

RE:  Complainant:  Angela D Dahlgren
     Respondent:   Port Of Portland
     Case #:       EEEMRG220826-11930
     EEOC #:       38D-2023-00314

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been administratively closed. This is the Bureau's final determination. If you disagree with this determination, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing: April 13, 2023**

Enclosure(s)
cc:    Ray D Hacke, Complainant's Attorney

 


Brian  Kunishige



CHRISTINA E. STEPHENSON
Labor Commissioner

May 11, 2023

BRIAN KUNISHIGE
85 WEST SUN RAY DR
QUEEN CREEK, AZ 85143

RE:     Complainant:    Brian Kunishige
        Respondent:     Port Of Portland
        Case #:         EEEMRG220511-92167
        EEOC #:         551-2022-02240

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division is now
administratively closed because the case has reached its one year anniversary date. This action does not affect
either the status of the EEOC investigation or your right to file a federal suit, pursuant to the worksharing
agreement between the Equal Employment Opportunities Commission (EEOC) and the Bureau of Labor and
Industries. Please call 1-800-669-4000 with inquiries regarding the status of this complaint. Be sure to
reference the EEOC charge number if you contact them.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you,
the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days
after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent
under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of
the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under
ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the
alleged violation</u>.*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the
Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants
interested in protecting these rights, should consult an attorney immediately regarding the requirements for
filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our
website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a
copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing:** May 11, 2023

Enclosure(s)



Alison  Lugar

OREGON BUREAU of LABOR & INDUSTRIES

CHRISTINA E. STEPHENSON
Labor Commissioner

May 24, 2023

ALISON LUGAR
12335 S BOYNTON ST
OREGON CITY, OR 97045

| | | |
|---|---|---|
| RE: | Complainant: | Alison Lugar |
| | Respondent: | Port Of Portland |
| | Case #: | EEEMRG220524-92183 |
| | EEOC #: | 551-2022-02243 |

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division is now administratively closed because the case has reached its one year anniversary date. This action does not affect either the status of the EEOC investigation or your right to file a federal suit, pursuant to the worksharing agreement between the Equal Employment Opportunities Commission (EEOC) and the Bureau of Labor and Industries. Please call 1-800-669-4000 with inquiries regarding the status of this complaint. Be sure to reference the EEOC charge number if you contact them.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires one year from the date of the alleged violation.***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: May 24, 2023

Enclosure(s)

Lisa  Midlam



**CHRISTINA E. STEPHENSON**
Labor Commissioner

April 14, 2023

LISA MIDLAM
C/O JANZEN LEGAL SERVICES, LLC
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:    Complainant:    Lisa Midlam
       Respondent:     Port Of Portland
       Case #:         EEEMRG220614-10878
       EEOC #:         38D-2022-00602

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT

This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. ***Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation</u>.***

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing**: April 14, 2023

Enclosure(s)
cc:    Caroline Hoffman Janzen, Complainant's Attorney

 Portland · Salem · Eugene      oregon.gov/boli
Help@boli.oregon.gov    971-245-3844
Ore. Relay TTY: 711    

Justin  Oser

CHRISTINA E. STEPHENSON
Labor Commissioner

OREGON BUREAU OF LABOR & INDUSTRIES

April 25, 2023

JUSTIN T OSER
C/O JANZEN LEGAL SERVICES, LLC
4550 SW HALL BLVD
BEAVERTON, OR 97005

RE:    Complainant:    Justin T Oser
       Respondent:     Port Of Portland
       Case #:         EEEMRG220624-10931
       EEOC #:         38D-2022-00616

This letter is to inform you that the above-captioned complaint filed with the Civil Rights Division has been dismissed because the Division did not find sufficient evidence to continue our investigation. This is the Bureau's final determination. If you wish to pursue your claim(s) further, you may wish to consult an attorney regarding your right to file a civil suit.

NOTICE OF RIGHT TO FILE A CIVIL SUIT
This is your 90-day notice letter. Although this case has been closed, pursuant to ORS 659A.880, you, the Complainant, may file a civil action against the Respondent under ORS 659A.885 within 90 days after the date of mailing of this 90-day notice. Any right to bring a civil action against the Respondent under ORS 659A.885 will be lost if the civil action is not commenced within 90 days after the date of the mailing of this 90-day notice. *Note: If the complaint was a public accommodations case filed under ORS 659A.403 or 659A.406, the right to file suit in state circuit court expires <u>one year from the date of the alleged violation.</u>*

Further, if the Respondent is a public entity, to preserve the right to file a suit in state circuit court, the Complainant must also comply with the Oregon Tort Claims Act (ORS 30.260 to 30.300). Complainants interested in protecting these rights, should consult an attorney immediately regarding the requirements for filing. The Oregon State Bar referral number for Portland is 503-620-0222 or 800-452-7636.

If you wish to receive a copy of this file, you may place a request for public records online through our website www.oregon.gov/boli/publicrecords, or by calling 971-245-3844. There is no fee to receive a copy.

Sincerely,
CIVIL RIGHTS DIVISION
Administrative Support Unit

**Date of Mailing:** April 25, 2023

Enclosure(s)
cc:    Caroline Hoffman Janzen, Complainant's Attorney

  


**Civil Rights Division – Bureau of Labor & Industries
Complaint Dismissal Memo**

| | |
|---|---|
| Complainant: | Justin T Oser |
| Respondent: | Port Of Portland |
| Case Number: | EEEMRG220624-10931 |
| Date: | April 20, 2023 |
| Investigator: | Michael Mohr |

Reviewed By:    _____ Theodore E. Wenk

Complainant alleged discrimination based on religion in that he was not granted a religious exemption from Respondent's COVID-19 vaccine requirement and was later terminated as a result of not getting vaccinated.

Complainant worked for Respondent as Marine Terminal Security Officer. Complainant interacted in-person with other employees, vendors, and members of the public as a requirement of his position. On October 14, 20221, Respondent announced a policy requiring its employees to receive a Coronavirus vaccine. Respondent also announced the timeline for receiving a vaccine or a religious or medical exemption. Respondent indicated in its position statement that it determined that Complainant had a sincere religious belief and granted his accommodation to not receive a vaccine with certain safety precautions such as masking and testing. Respondent provided a form dated December 22, 2021, and signed by Complainant indicating that he was refusing to accept the accommodations requiring him to be tested and masked. Complainant refused to accept an accommodation that offered him far more than a de minimis accommodation for his disability. Respondent even indicated it would pay for testing and give him an hour of paid time to get tested when required. The complaint should therefore be dismissed.

_____
_____ /s/ Michael Mohr

EXHIBIT  E

Angie  Dahlgren

Case 3:23-...
NEW razr+
FLIP THE SCRIPT
LEARN MORE

Home | World Clock | Time Zones | Calendar | Weather | Sun & Moon | Timers | Calculators | Apps & API | Free Fun

Home / Calculators / Date Calculator / Results

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days | **Add Days** | Workdays | Add Workdays | Weekday | Week №

## Start Date

| Month: | Day: | Year: | Date: | | Add/Subtract: | Years: | Months: | Weeks: | Days: |
|--------|------|-------|-------|--|---------------|--------|---------|--------|-------|
| 4 | 13 | 2023 | 📅 | | (+) Add | | | | 90 |

Today

Include the time                    Include only certain weekdays

☐ Repeat

**Calculate New Date**

From **Thursday, April 13, 2023**
Added 90 days

**Result: Wednesday, July 12, 2023**

◀ Make adjustment and calculate again                    Start Again ▶

Calendar showing period from April 13, 2023 to July 12, 2023



| April 2023 17 days added | May 2023 31 days added | June 2023 30 days added | July 2023 12 days added |
|---|---|---|---|

☐ = Start date (Apr 13, 2023)    ☐ = Final result date (Jul 12, 2023)

## Make a New Calculation

- Make adjustment and calculate again
- New calculation with Wednesday, July 12, 2023 as starting point
- New calculation (no time)
- New calculation with both date and time included

❓ Need some help?

## Help and Example Use

- Some typical uses for the Date Calculators

## Date Calculators

- Date Calculator – Add or subtract days, months, years
- Duration Between Two Dates – Calculates number of days.
- Time and Date Duration – Calculate duration, with both date and time included
- Birthday Calculator – Find when you are 1 billion seconds old

## Related Links

- Date/calendar related services – Overview
- Calendar Generator – Create a calendar for any year.
- The World Clock – Current time all over the world
- Countdown to any date


**Time & Date Calculator App for iOS**
See how long remains before a deadline or exactly when those 30 days are up.


**Love Our Site? Become a Supporter**
- Browse our site advert free.
- Sun & Moon times precise to the second.
- Exclusive calendar templates for PDF Calendar.

**Company**
About us
Careers/Jobs
Contact Us
Contact Details
Sitemap
Newsletter

**Follow Us**
  

**Legal**
Link policy
Advertising
Disclaimer
Privacy Policy
Terms & Conditions
My Privacy

**Sites**
timeanddate.no
timeanddate.de

**Services**
World Clock
Time Zones
Calendar
Weather
Sun & Moon
Timers
Calculators
API



Brian  Kunishige

JUN 21/22

**timeanddate**

Home | World Clock | Time Zones | Calendar | Weather | Sun & Moon | Timers | Calculators | Apps & API | Free Fun |

Home / Calculators / Date Calculator / Results

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days | **Add Days** | Workdays | Add Workdays | Weekday | Week №

## Start Date

| Month: | Day: | Year: | Date: |
|--------|------|-------|-------|
| 5 | / 11 | 2023 | |

Today

Include the time

☐ Repeat

**Add/Subtract:**
(+) Add

| Years: | Months: | Weeks: | Days: |
|--------|---------|--------|-------|
| | | | 90 |

Include only certain weekdays

**Calculate New Date**

> From **Thursday, May 11, 2023**
> Added 90 days
>
> **Result: Wednesday, August 9, 2023**

◀ Make adjustment and calculate again                    Start Again ▶

**Calendar showing period from May 11, 2023 to August 9, 2023**

| May 2023 | June 2023 | July 2023 | August 2023 |
|----------|-----------|-----------|-------------|
| 20 days added | 30 days added | 31 days added | 9 days added |

**May 2023** — 20 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | **11** | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

**June 2023** — 30 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

**July 2023** — 31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

**August 2023** — 9 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|-----|-----|-----|-----|-----|-----|-----|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | **9** | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

☐ = Start date (May 11, 2023)         = Final result date (Aug 9, 2023)

## Make a New Calculation

- Make adjustment and calculate again
- New calculation with Wednesday, August 9, 2023 as starting point
- New calculation (no time)
- New calculation with both date and time included

❓ Need some help?

## Help and Example Use

- Some typical uses for the Date Calculators

### Date Calculators

- Date Calculator – Add or subtract days, months, years
- Duration Between Two Dates – Calculates number of days.
- Time and Date Duration – Calculate duration, with both date and time included
- Birthday Calculator – Find when you are 1 billion seconds old

### Related Links

- Date/calendar related services – Overview
- Calendar Generator – Create a calendar for any year.
- The World Clock – Current time all over the world
- Countdown to any date

**Time & Date Calculator App for iOS**
See how long remains before a deadline or exactly when those 30 days are up.

Advertising

How was your experience? 👍 👎                                        Contact Us ✉

 **Love Our Site? Become a Supporter**
- Browse our site advert free.
- Sun & Moon times precise to the second.
- Exclusive calendar templates for PDF Calendar.

**Company**
About us
Careers/Jobs
Contact Us
Contact Details
Sitemap
Newsletter

**Legal**
Link policy
Advertising
Disclaimer
Privacy Policy
Terms & Conditions
My Privacy

**Services**
World Clock
Time Zones
Calendar
Weather
Sun & Moon
Timers
Calculators
API

**Follow Us**
  

**Sites**
timeanddate.no
timeanddate.de

**timeanddate**
© Time and Date AS 1995–2023

Alison Lugar

Lisa  Midlam

Home / Calculators / Date Calculator / Results

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days | **Add Days** | Workdays | Add Workdays | Weekday | Week №

## Start Date

| Month: | Day: | Year: | Date: | | Add/Subtract: | Years: | Months: | Weeks: | Days: |
|---|---|---|---|---|---|---|---|---|---|
| 4 | 14 | 2023 | 📅 | | (+) Add ⌄ | | | | 90 |

Today

Include the time            Include only certain weekdays

☐ **Repeat**

[ Calculate New Date ]

> From **Friday, April 14, 2023**
> Added 90 days
> ———————————————————————
> **Result: Thursday, July 13, 2023**

◀ Make adjustment and calculate again        Start Again ▶

### Calendar showing period from April 14, 2023 to July 13, 2023



**April 2023** — 16 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| 2 | 3 | 4 | 5 | 6 | 7 | 1 |
| 9 | 10 | 11 | 12 | 13 | **14** | 8 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

**May 2023** — 31 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

**June 2023** — 30 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

**July 2023** — 13 days added

| Sun | Mon | Tue | Wed | Thu | Fri | Sat |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | **13** | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

▢ = Start date (Apr 14, 2023)    ▢ = Final result date (Jul 13, 2023)

## Make a New Calculation

- Make adjustment and calculate again
- New calculation with Thursday, July 13, 2023 as starting point
- New calculation (no time)
- New calculation with both date and time included

❓ **Need some help?**

## Help and Example Use

- Some typical uses for the Date Calculators



**Time & Date Calculator App for iOS**
See how long remains before a deadline or exactly when those 30 days are up.

## Date Calculators

- Date Calculator – Add or subtract days, months, years
- Duration Between Two Dates – Calculates number of days.
- Time and Date Duration – Calculate duration, with both date and time included
- Birthday Calculator – Find when you are 1 billion seconds old

## Related Links

- Date/calendar related services – Overview
- Calendar Generator – Create a calendar for any year.
- The World Clock – Current time all over the world
- Countdown to any date

How was your experience? 👍 👎      Contact Us ✉

**Love Our Site? Become a Supporter**
- Browse our site **advert free.**
- Sun & Moon times **precise to the second.**
- **Exclusive calendar templates** for PDF Calendar.

**Company**
- About us
- Careers/Jobs
- Contact Us
- Contact Details
- Sitemap
- Newsletter

**Legal**
- Link policy
- Advertising
- Disclaimer
- Terms & Conditions
- Privacy Policy
- My Privacy

**Services**
- World Clock
- Time Zones
- Calendar
- Weather
- Sun & Moon
- Timers
- Calculators
- API

**Follow Us**
  

**Sites**
- timeanddate.no
- timeanddate.de



© Time and Date AS 1995–2023


Advertising
▷ Square
**Start selling with the new Square Stand today.**
[ Learn more ]

Justin  Oser


timeanddate

Home | World Clock ˅ | Time Zones ˅ | Calendar ˅ | Weather ˅ | Sun & Moon ˅ | Timers ˅ | Calculators ˅ | Apps & API ˅ | Free Fun ˅ | 👤 ˅ | ⤴ | 🔍

Home / Calculators / Date Calculator / Results

# Date Calculator: Add to or Subtract From a Date

Enter a start date and add or subtract any number of days, months, or years.

Count Days | **Add Days** | Workdays | Add Workdays | Weekday | Week №

## Start Date

| Month: | Day: | Year: | Date: | | Add/Subtract: | Years: | Months: | Weeks: | Days: |
|---|---|---|---|---|---|---|---|---|---|
| 4 | 25 | 2023 | 📅 | | (+) Add ˅ | | | | 90 |

Today

Include the time          Include only certain weekdays

☐ **Repeat**

**Calculate New Date**

From **Tuesday, April 25, 2023**
Added 90 days

**Result: Monday, July 24, 2023**

◄ **Make adjustment and calculate again**          Start Again ▶

**Calendar showing period from April 25, 2023 to July 24, 2023**



☐ = Start date (Apr 25, 2023)    ☐ = Final result date (Jul 24, 2023)

## Make a New Calculation

- Make adjustment and calculate again
- New calculation with Monday, July 24, 2023 as starting point
- New calculation (no time)
- New calculation with both date and time included

❓ **Need some help?**

## Help and Example Use

- Some typical uses for the Date Calculators

 **Time & Date Calculator App for iOS**
See how long remains before a deadline or exactly when those 30 days are up.

## Date Calculators

- Date Calculator – Add or subtract days, months, years
- Duration Between Two Dates – Calculates number of days.
- Time and Date Duration – Calculate duration, with both date and time included
- Birthday Calculator – Find when you are 1 billion seconds old

## Related Links

- Date/calendar related services – Overview
- Calendar Generator – Create a calendar for any year.
- The World Clock – Current time all over the world
- Countdown to any date

How was your experience? 👍 👎                Contact Us ✉

**Love Our Site? Become a Supporter**
- Browse our site advert free.
- Sun & Moon times precise to the second.
- Exclusive calendar templates for PDF Calendar.

**Company**
About us
Careers/Jobs
Contact Us
Contact Details
Sitemap
Newsletter

**Follow Us**
f  ✕  in  📷  ▶

**Legal**
Link policy
Advertising
Disclaimer
Privacy Policy
Terms & Conditions
My Privacy

**Sites**
timeanddate.no
timeanddate.de

**Services**
World Clock
Time Zones
Calendar
Weather
Sun & Moon
Timers
Calculators
API

 timeanddate
© Time and Date AS 1995–2023